## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 25-CR-00188-SEH** |
| **RODERICK DALE FAVORS,** | |
| **Defendant.** | |

## <u>OPINION AND ORDER</u>

This matter comes before the Court on Defendant Roderick Favors's motion to revoke United States Magistrate Judge Susan E. Huntsman's detention order. [ECF No. 71]. After reviewing all the documents available in the record and considering the applicable law, the Court concludes that a hearing is not necessary to resolve the issues presented. *United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019) (explaining that the Court may hold a hearing, but that a hearing is not required). For the reasons set forth below, the motion is denied.

### I. Background and Procedural History

On June 2, 2025, a federal grand jury charged Favors with drug conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii), and possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). [ECF No. 51]. Favors is charged

with three co-defendants. [*Id.*]. On the day of the defendant's initial appearance, the government filed a motion for detention, asserting that the court should detain Favors because no conditions of release could reasonably assure Defendant's appearance or the safety of any other person and the community, and that a rebuttable presumption for detention applied. [ECF No. 22]. On June 4, 2025, Judge Huntsman held a detention hearing and ordered Defendant detained pending trial. [ECF Nos. 62, 63].

### A. The Government's Proffer

The government began the evidentiary portion of the hearing by informing Judge Huntsman that it intended to proceed by proffer and asked that she take judicial notice of the pretrial services report. [ECF No. 77 at 4].

The government first proffered that Favors was part of a larger drug trafficking organization. [ECF No. 77 at 4]. The Oklahoma Bureau of Narcotics ("OBN") obtained a state ping warrant for Favors's cell phone, based upon his sale of methamphetamine to a confidential source. [*Id.* at 4–5]. From the warrant, OBN learned that Favors left Tulsa by flying to California but travelled back to Oklahoma City on a bus. [*Id.* at 5]. The government proffered that if DEA Task Force Officer Evan Foster had been called as a witness, he would have explained that this behavior is consistent with drug trafficking. [*Id.* at 4–5].

2

After Favors arrived in Oklahoma City, he began travelling back to Tulsa with two of his co-defendants and an unindicted co-conspirator. [ECF No. 77 at 5]. The Oklahoma Highway Patrol conducted a traffic stop while Favors rode in the backseat. [*Id*.]. During the stop, the trooper noticed a strong odor of marijuana and some of the passengers provided him with conflicting stories. [*Id*.]. Upon searching the vehicle, the trooper found approximately 30 pounds of methamphetamine with an amount of suspected cocaine. [*Id*.]. The methamphetamine was packaged in three 10-pound plastic vacuum-sealed bags, each placed inside a separate piece of luggage. [*Id*. at 6]. The three pieces of luggage were all in the backseat with Favors and a co-defendant. [*Id*.]. One of the pieces of luggage containing drugs also contained a prescription pill bottle with Favors's name on its label. [*Id*.]. The government proffered that Officer Foster would testify that the drugs recovered were possibly valued at $90,000. [*Id*.]. He would also testify that law enforcement is aware of other unidentified members of this conspiracy located in California, and possibly Mexico, where the drugs originated. [*Id*.].

Later the same day, OBN agents obtained and executed a search warrant on Favors's home. [ECF No. 77 at 7]. Inside, they found approximately $15,000 and a loaded firearm. [*Id*.].

3

## B. The Defendant's Proffer

Favors did not call any witnesses at the hearing. [ECF No. 77 at 7–12]. Instead, his counsel discussed Favors's history and characteristics that were contained in the pretrial services report. [*Id*. at 10]. She pointed specifically to his family ties and 39 years in the community. [*Id*.]. Favors's counsel explained that Favors's parents were drug addicts and that he was raised by his grandmother, who remains close to Favors and his sister. [*Id*. at 9–10]. She further explained that Favors had a history of high blood pressure, heart disease, and kidney disease, and took multiple medications for these conditions. [*Id*. at 9].

She also talked about his criminal history. [ECF No. 77 at 10]. She stated that his last felony arrest was nearly 10 years ago, and that Favors had a criminal misdemeanor offense in 2018. [*Id*. at 10–11]. He had failures to appear related to traffic ticket offenses, a misdemeanor charge in 2016, and another failure to appear in 2019. [*Id*. at 11]. Despite his failures to appear, Favors's counsel stated that he was young during most of his criminal history and had no contact with law enforcement since 2019. [*Id*. at 14]. His counsel further explained that there was no evidence that Favors possessed a passport or that he committed an act of violence in relation to the current charged offenses. [*Id*. at 12].

4

### C. The Pretrial Services Report

As set out above, the government requested that Judge Huntsman take judicial notice of the pretrial services report. [ECF No. 77 at 4]. The report showed that Favors was 43 years old, had been in the Tulsa community for most of his life, and had family residing in Tulsa. He had never been married and did not have children. If released, Favors would continue to live at an apartment complex by himself.

Favors reported that he completed the 11th grade before withdrawing from high school. He had worked part-time as a general laborer during the previous six months and generated additional income from car sales. He stated that he could return to his job if released. Favors's sister was able to verify his family information, military service, and parts of his employment, but she was unable to verify the remainder of the report.

The report further detailed Favors's reported medical and substance abuse history. Favors stated that he was receiving routine medical care for several ailments. He possessed an Oklahoma Medical Marijuana Card and reported a long history of marijuana use. Admitting previous benzodiazepine abuse, Favors stated an interest in substance abuse treatment.

The report also detailed Favors's prior criminal history. It showed he had a long criminal history that included convictions for trafficking in illegal

5

drugs, possession of a controlled dangerous substance, burglary, transporting a loaded firearm, and assault with a dangerous weapon. It further showed that Favors had been arrested and convicted while under supervision and detailed multiple instances of Favors's failure to appear in court.

Probation found no condition or combination of conditions that would reasonably assure the safety of the community.

### D. Judge Huntsman's Order

After hearing arguments from both parties, Judge Huntsman explained her findings. First, she found the rebuttable presumption applied under 18 U.S.C. § 3142(e)(3) because he was indicted on offenses that carried a maximum penalty of 10 or more years of imprisonment under the Controlled Substances Act. [ECF No. 77 at 20]. Accordingly, she presumed that no condition or combination of conditions existed that would reasonably assure the appearance of the defendant as required and the safety of the community. [*Id*.]. Next, she recognized that she needed to determine whether Favors had presented some credible evidence to rebut the presumption. [*Id*. at 20–21]. After considering Favors's strong family ties, employment, lack of mental health issues and need to receive good treatment for his health, Judge Huntsman found that Favors had presented sufficient evidence to rebut the

presumption as to flight. [*Id.* at 21]. However, she did not find the presumption rebutted as to danger to the community. [*Id.*].

Although Judge Huntsman found that Favors failed to present sufficient credible evidence to rebut the presumption that no conditions would assure the safety of others, she nonetheless considered whether she would detain Favors without the presumption. [ECF No. 77 at 21]. She considered the nature and circumstances of the offense, the weight of the evidence, Favors's history and characteristics, and the nature and seriousness of the danger to any person of the community if Favors were released. [*Id.*]. She explained that Favors was charged with possessing more than 500 grams of a mixture containing methamphetamine and was found in possession of about 30 pounds (or at least some portion of the 30 pounds) that had a very large street value. [*Id.* at 22].

She found the weight of the evidence strong, given Favors's prior sale of methamphetamine to a confidential source, his flight out to California and return to Oklahoma via Greyhound bus, his proximity to the drugs when they were discovered, and the presence of a prescription bottle bearing his name in one of the bags containing drugs. [*Id.*]. Relying on the danger drug trafficking poses to the community, Judge Huntsman concluded that Favors needed to be detained pending trial. She held that the government had shown by clear

and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community. [*Id.*].

The analysis came out differently as to the defendant's risk of flight. Judge Huntsman held that there were conditions she could impose that would ensure the defendant's appearance. [ECF No. 77 at 22]. Judge Huntsman found that Favors's criminal history stretched back into his childhood and included convictions for drug possession, drug trafficking, assault with a dangerous weapon, transporting a loaded firearm, burglary, and eluding a police officer. [ECF No. 77 at 23]. Despite his last conviction occurring six years earlier, Judge Huntsman found this lapse in time insufficient to alleviate her concerns about the safety of the community given the strength of the evidence and nature and circumstances of the offense. [*Id.*]. Accordingly, she ordered Favors detained. [ECF No. 63].

Favors moved to revoke Judge Huntsman's detention order and the government responded. [ECF Nos. 71, 73].

## II. Applicable Standard

"If a person is ordered detained by a magistrate judge … the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The Court's

review of a magistrate judge's detention order is *de novo*; thus, it must make "an independent determination of the proper pretrial detention or conditions for release." *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

Under the Bail Reform Act, a court must order a criminal defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Specifically, the government must prove risk of flight by a preponderance of the evidence, and danger to any other person or the community by clear and convincing evidence. *Cisneros*, 328 F.3d at 616 (citations omitted).

To determine whether there are conditions that would "reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community[,]" the Court must consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial

             resources, length of residence in the community,
             community ties, past conduct, history relating to
             drug or alcohol abuse, criminal history, and
             record concerning appearance at court
             proceedings; and

     (B) whether, at the time of the current offense or
          arrest, the person was on probation, on parole, or
          on other release pending trial, sentencing, appeal,
          or completion of sentence for an offense under
          Federal, State, or local law; and

   (4) the nature and seriousness of the danger to any person or the
      community that would be posed by the person's release.

18 U.S.C. § 3142(g). "[A]pplying and weighing the relative importance of the

statutory factors requires an individualized determination that necessarily

differs for each defendant depending on the circumstances of the case."

*United States v. Bragg*, No. 21-5082, 2021 WL 6143720, at *2 (10th Cir. Dec.

30, 2021).[1]

    If the Court finds probable cause to believe the defendant committed one

of the offenses listed at 18 U.S.C. § 3142(e)(3), then it is presumed—subject to

rebuttal—"that no condition or combination of conditions will reasonably

assure the appearance of the person as required and the safety of the

community[.]" 18 U.S.C. § 3142(e)(3). "An offense for which a maximum term

of imprisonment of 10 years or more is prescribed in the Controlled

---

[1] Unpublished Tenth Circuit opinions are not binding precedent but may be cited for
their persuasive value. *See* Fed. R. App. P. 32.1.

Substances Act" is an offense listed at 18 U.S.C. § 3142(e)(3)(A). "Once the

presumption is invoked, the burden of production shifts to the defendant."

*United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991). Although the

defendant must produce some evidence to rebut the presumption, the

government always bears the ultimate burden of persuasion. *Id*. at 1354–55.

## III. Analysis

Based upon its independent, *de novo*, review of the record, the Court

concludes that the government properly invoked the presumption under

§ 3142(e), Favors failed to present sufficient evidence to rebut that

presumption, and the government met its burden of persuasion. Therefore,

Favors should remain detained pending trial.

The indictment shows probable cause that Favors committed an offense

for which a maximum term of imprisonment of 10 years or more is prescribed

in the Controlled Substances Act. *See United States v. Silva*, 7 F.3d 1046

(10th Cir. 1993) (table) ("The grand jury indictment is sufficient to establish

the finding of probable cause that defendant committed a federal …

offense[.]"). Thus, the presumption applies.

Considering the information presented at the detention hearing, the Court

finds that Favors has not presented any credible evidence to rebut the

presumption of detention—either as to flight or safety. "The defendant's

11

burden of production is not heavy, but some evidence must be produced."

*Stricklin*, 932 F.2d 1353, 1355. The defendant's ties to the community, family

connections, and employment history are not enough to rebut the

presumption, when much of this information in the pretrial services report

could not be verified. Favors presented no witness testimony or offer of proof

at the detention hearing. Although he argues that the § 3142(g) factors weigh

in favor of release and that certain conditions would assure the safety of the

community, he presents no documented evidence that would rebut the

presumption for detention and require the Court to consider factors under

§ 3142(g). [*See* ECF No. 71 at 6].

Nothing indicates that the government has abandoned or waived the

§ 3142(e) detention presumption and the Court finds that Favors has failed to

produce any credible evidence to rebut it. The government has shown that

Favors's alleged criminal activity involved a significant amount of drugs,

interstate travel, and drug traffickers who have yet to be apprehended.

Favors has also been convicted while under supervision and has failed to

appear in court approximately eight times. The Court finds this sufficient to

demonstrate that no conditions of release would reasonably assure his

appearance and the safety of the community. Because Favors's supply

network remains intact, methamphetamine distribution remains a viable

way for Favors to pay for the drugs that were seized during his arrest, which enhances his risk to the community. "Indeed, the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community." *United States v. Portillo-Camargo*, No. 22–1244, 2022 WL 5434556, at *4 (10th Cir. Oct. 7, 2022) (quoting *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989)) (internal quotation marks omitted). The government invoked the presumption of detention and met its burden of persuasion.

## Conclusion

Having conducted a *de novo* review, the Court finds that the government has proved that no conditions or combinations of conditions would reasonably assure Favors's appearance or the safety of any other person if Favors were released. Therefore, Favors will remain detained pending trial.

IT IS THEREFORE ORDERED that the defendant's Motion to Revoke Detention Order [ECF No. 71] is DENIED.

DATED this 27th day of June, 2025.

Sara E. Hill
UNITED STATES DISTRICT JUDGE